CATHARINE COLLIGNON, executrix &c.,

*v.*

SARAH COLLIGNON.

In an action to foreclose a mortgage executed by complainant's husband and another, and assigned to complainant, complainant testified that her husband mutilated it without her consent, and by mistake. The mortgagors subsequently executed an agreement reciting that the mortgage had been mutilated through mistake, and declaring that no advantage would be taken of it, and thereafter interest was regularly paid on it.—*Held*, that it was valid as against a judgment creditor of a subsequent owner of the premises mortgaged, though the agreement was not recorded, the mortgage never having been canceled of record.

On bill, answer, replication and proofs in open court.

*Mr. William M. Johnson,* for the complainant.

*Mr. Sherrerd Depue,* for the defendant.

GREEN, V. C.

This bill is filed by Catharine Collignon, sole surviving executrix of the last will and testament of Nicholas Collignon, deceased, late of the county of Bergen, to foreclose two mortgages, one dated November 22d, 1884, made by Claudius O. Collignon upon certain property in Bergen county to secure the payment of $17,710 on the 22d day of November, 1889, with interest at six per cent.

It is conceded that the complainant is entitled to a decree on this mortgage.

The second mortgage was given to secure the bond of Nicholas Collignon to one John J. Demarest, conditioned to pay $1,000 within one year from date, with interest at six per cent. Both the mortgage and the bond were dated April 4th, 1862. This mortgage was made by Nicholas and Claudius O. Collignon to John J. Demarest upon two tracts of land, the first of which

was included in the first tract described in complainant's first-mentioned mortgage. The bond and mortgage were assigned by John J. Demarest to complainant by deed of assignment dated April 5th, 1862, and recorded May 22d, 1862. It is to the enforcement of this mortgage that objection is raised by the Clinton bank, a judgment creditor of a subsequent owner of the premises. The bill alleges that, by inadvertence and mistake, said bond and mortgage, although not paid or satisfied, were mutilated by tearing off the seals and part of the signatures.

The bond and mortgage were presented in evidence by the complainant. The bond is mutilated by having the lower right-hand portion of the first page torn off, which destroyed the seal and the signature except the letters "Nicholas."

The mortgage has been similarly mutilated by leaving off the signature the christian name Nicholas, the letter "C" of the surname, and the letters "Clau" of the signature of Claudius. The signatures of Nicholas and Claudius O. Collignon and of Garret S. Demarest, the subscribing witness, all of whom are dead, were proven on the trial.

This mortgage is registered in the clerk's office of Bergen county, May 22d, 1862, in Book Q of Mortgages, page 295.

The bond has endorsed upon it payments of interest "in full to date" on May 1st, 1869, and on May 1st in every year from 1873 to 1884, when follows this endorsement, "Interest on this bond has been adjusted to the 22d of November, 1884," signed "Catharine Collignon."

After this there are receipts of interest of $50 each, the rate of interest apparently having been changed, under the date of November 22d in each year from 1885 to 1891.

The mortgage has not been canceled of record.

The complainant, who is the only living witness, says that she saw her husband tear the seals off these papers, but that she did not consent thereto, and has never received the amount of the bond and mortgage. She says, substantially, she does not know the date on which the seals were removed, but that he was looking over some papers at the house, she thinks, in the evening; that he kept his papers in the living-room in a safe; that he

had just come back from Squire Demarest's, and had been fixing
some other papers he had there in his hand.   She does not know
what he intended to tear.   She was sitting beside him looking
at the papers; that there were some papers that had to be torn
off; that he had some papers from the squire's, and that he said
some papers had to be canceled and sent to Hackensack, and
that he tore the wrong ones.   The testimony of the complainant
as to details of the transaction, it must be admitted, is somewhat
confused, and her memory of all the incidents, in a measure,
misty, but it must be remembered that she is a lady of advanced
years, not accustomed to attending to business and that she is
speaking of an event which happened from twenty-five to thirty
years ago.   But I think she is sufficiently corroborated by
writings and subsequent actions of the parties.

An agreement was offered in evidence, dated January 18th,
1868, executed under the signatures and seals of Nicholas and
Claudius O. Collignon, their respective signatures and that of
the subscribing witness being proved.   It recites the making of
the mortgage to John J. Demarest, and that the bond and mort-
gage, although not paid or satisfied, have been inadvertently, and
through mistake, mutilated by tearing off the seals and part of
the signatures; that said parts so torn off have been lost and
cannot be found to be replaced ; that in order to have the said
bond and mortgage remain in full force and effect, and to
have said mutilation explained and remedied; it witnesseth that
the said Nicholas Collignon and Claudius O. Collignon do
thereby covenant and agree to pay and fulfill the conditions and
responsibilities mentioned and required to be done and per-
formed by them according to the conditions and requirements
mentioned in said bond and mortgage; that no advantage will
be taken of the mutilation above mentioned, and do thereby
bind themselves and their heirs, executors and administrators,
for the due performance of the agreements and the conditions
stipulated to be done and performed by them in and by said
bond and mortgage, notwithstanding said mutilation.   This
document has the appearance of age, and bears an internal

revenue stamp of the United States, canceled with the initials " N. C.," under date of January 18th, 1868.

Nicholas Collignon, the husband of the complainant, died in June, 1879, leaving a last will and testament, which was proved by his widow Catharine and his brother Claudius, the executors. By an agreement, dated November 22d, 1884, between Claudius O. Collignon and the complainant, as executors of Nicholas Collignon, deceased, and the said Claudius O. Collignon, of the second part, it was agreed, as part of the settlement of the affairs of a partnership existing between Nicholas and Claudius, that the said executors should convey to said Claudius certain lands therein described, being the lands mentioned in the mortgage first mentioned, and which include the property embraced in the mortgage made to John J. Demarest, and that part of the consideration thereof was that Claudius O. Collignon was to assume and pay the said mortgage for $1,000 given by himself and Nicholas Collignon to John J. Demarest, and then held by Catharine Collignon. It is not disputed that, in pursuance of that agreement, the executors, by deed dated November 22d, 1884, conveyed to Claudius all the interest and estate of said Nicholas in the lands, subject to the said mortgage, payment whereof was assumed by Claudius.

Claudius O. Collignon departed this life April 17th, 1891, leaving complainant sole surviving executrix of the estate of Nicholas. Claudius left a will by which he gave and devised the whole of his estate, after certain specific legacies, to his wife, Sarah Collignon, and appointed her sole executrix. Sarah Collignon, by deeds dated April 1st, 1892, conveyed part of the premises to Peter C. Collignon, such deeds being made expressly subject to the lien of both of said mortgages, payment whereof was assumed by the grantee.

The bill makes the Clinton bank a defendant on the allegation that the Clinton bank, on March 21st, 1893, recovered a judgment in the New Jersey supreme court against Sarah Collignon for $4,227.92, and that, on April 17th, 1893 another judgment was recovered by it against her in said court for $6,433.66, and that, subsequently, said bank exhibited two bills

of complaint in this court against the said Sarah Collignon and Peter C. Collignon, alleging that the aforesaid conveyances from Sarah to Peter were fraudulent and void as against the creditors of said Sarah, and praying to set the same aside; that notice of the pendency of the first of these suits was filed in the office of the clerk of Bergen county March 29th, 1893, and notice of the second on May 19th, 1893.

The Clinton bank resists the allowance of the one-thousand-dollar bond and mortgage on the ground that, by their mutilation, they were destroyed as valid and existing encumbrances on the property; that the subsequent paper did not revive them as against a judgment creditor because it was not acknowledged and recorded; that there is no clear evidence that the mutilation was by mistake, but if so, that it was an act of complainant's agent of such gross negligence that a court of equity will not relieve against it.

I think the evidence does establish that the mutilation of the bond and mortgage was a mistake on the part of Nicholas Collignon; that he intended to cancel some other papers, and by mistake tore the seals and part of the signatures off those in controversy. The testimony of the complainant, the subsequent agreement of the two mortgagors, reciting the mistake and attempting to rectify it, the assumption of the payment of this mortgage by Claudius and the payment regularly of the interest, in my judgment leave no room for doubt on this point.

There are many cases in which the court has said that equity will not relieve against a mistake resulting from the complaining party's own negligence. In most of the cases this was a declaration not subject to criticism with reference to the facts under determination, but it is not to be accepted as a canon of universal application. Professor Pomeroy, in *2 Pom. Eq. Jur.* § *856 and notes,* vigorously disputes the correctness of any such contention. Chancellor Green, in *Banta* v. *Vreeland, 2 McCart. 103,* which was a suit brought to foreclose two mortgages, one of which had been, by mistake, surrendered by the complainant to the defendant and canceled of record, says (at *p. 107*) of the rule referred to: "The principle is usually applied in relieving

against contracts entered into under a mistake, although it is doubtless susceptible of a wider application. The present case, however, does not fall within the operation of the principle. The complainant received no consideration for the act, and defendant gave none. The complainant entered into no engagement from which he asks relief. Under a mistaken impression that the mortgage was satisfied, he consented to its cancellation. It is clearly against conscience that the defendant should avail himself of the mistake to escape the payment of an honest debt."

If Nicholas or Claudius Collignon had sought to take advantage of the cancellation of this bond and mortgage under the circumstances proved, without its having been paid and satisfied, then the attempt would have been a fraud, on their part, upon the mortgagee, which this court would not have lent its aid to perpetrate. But they did no such thing. They attempted, as far as was in their power, to rectify the mistake. The document which they signed is not to be regarded as a mortgage requiring acknowledgment and record to make it effective against judgment creditors and subsequent mortgagees and purchasers. They already had notice of the mortgage by its record, which was not canceled. The agreement was a solemn admission by them, under seal, that the mutilation of the bond and mortgage was done through a mistake of fact as well as a promise to pay the amount intended to be secured thereby. It was an attempt to rehabilitate the former instrument. Tearing off the seals and part of the signatures by mistake, however, did not, in equity, destroy the enforceability of the instruments. It is in the power of the court, even when the record has been canceled, to annul the cancellation and enforce the debt by the foreclosure and sale of the mortgaged premises. *Banta* v. *Vreeland, supra.* In this case the bond was afterwards recognized by the payment of interest, and when Claudius O. Collignon, after the death of his brother and partner, Nicholas Collignon, bought the property, he expressly recognized the mortgage as an existing encumbrance and assumed its payment as part of the consideration of the purchase. Claudius, in his lifetime, in the face of these facts, could not have successfully insisted on the annulment of these

instruments from their accidental cancellation. Catharine, his devisee and legatee, stood in his place. She had no other or greater rights than her source of title, and her estate was subject to all equities existing against it or him through whom she claimed. The judgments of the Clinton bank give it no standing in a position which she would not be entitled to hold.

I will advise a decree for the complainant on both mortgages.